IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHELLY A. O.,[1]                                              No. 3:18-cv-02158-HZ

                          Plaintiff,                         OPINION & ORDER

        v.

COMMISSIONER, Social Security
Administration,

                          Defendant.

HERNÁNDEZ, District Judge:

        Plaintiff brings this action for judicial review of the Commissioner's final decision

denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the non-governmental party or parties in this case. Where applicable, this opinion uses the same
designation for non-governmental party's immediate family members.

§ 1382(c)(3)). Because the Commissioner's decision is free of legal error and supported by substantial evidence in the record, the Court AFFIRMS the decision and DISMISSES this case.

## BACKGROUND

Plaintiff was born on January 7, 1965 and was forty-seven years old on September 20, 2012, the date the application was filed. Tr. 614.[2] Plaintiff has at least a high school education and has no past relevant work Tr. 614. Plaintiff claims she is disabled based on conditions including "generalized anxiety disorder ("GAD"), post-traumatic stress disorder ("PTSD"), depressive disorder, borderline intellectual functioning ("BAF"), lumbago, chronic pain, and a foot condition diagnosed as congenital pes planus, claw toe deformity, acquired hammer toes, and Achilles tendinitis." Tr. 597.

Plaintiff's first application for benefits was denied initially on February 19, 2013, and upon reconsideration on September 20, 2013. Tr. 594. A hearing was held before Administrative Law Judge Jo Hoenninger on December 23, 2014. Tr. 36–72, 594.  ALJ Hoenninger issued a written decision on January 23, 2015, finding that Plaintiff was not disabled and therefore not entitled to benefits. Tr. 18–30, 594. The Appeals Council declined review, rendering ALJ Hoenninger's decision the Commissioner's final decision. Tr. 594. On June 10, 2016, Plaintiff appealed that final decision to the United States District Court for the District of Oregon. Tr. 594. On May 4, 2017, the district court reversed the ALJ's January 23, 2015 decision and remanded the case for further proceedings. Tr. 594. The Appeals Council consolidated the case with a second application for SSI benefits that Plaintiff had filed on June 9, 2016. Tr. 595.

A second hearing was held before Administrative Law Judge Jo Hoenninger on May 17, 2018. Tr. 625–48.  On August 27, 2018, ALJ Hoenninger issued a written decision, again finding that Plaintiff was not disabled. Tr. 594–615.

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 9.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden

and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 20, 2012, the application date. Tr. 597.

At step two, the ALJ determined that Plaintiff had the "following severe impairments: generalized anxiety disorder ("GAD"), post-traumatic stress disorder ("PTSD"), depressive disorder, borderline intellectual functioning ("BIF"), lumbago, chronic pain, and a foot condition diagnosed as congenital pes planus, claw toe deformity, acquired hammer toes, and Achilles tendinitis." Tr. 597.

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 598–99.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

> to perform light work . . . except as follows: She can stand and walk two hours total in an eight-hour workday. She has no limitations on sitting. She needs a sit/stand option at will. She can frequently climb ladders, ropes, and scaffolds, stoop, kneel, crouch, and crawl. She can understand and remember simple instructions. She has sufficient concentration, persistence, and pace to complete simple, routine tasks in two-hour-increments for a normal workday and workweek with normal breaks. She should have only occasional, brief, superficial interactions with coworkers and the general public. She can accept supervision delivered in a normative fashion. She should not be in a job that requires more than occasional verbal communication. She may need to elevate her right foot six inches above the floor twice a day for 15 to 20 minutes each time, with no expectation that it would interfere with work.

Tr. 599.

At step four, the ALJ determined that Plaintiff had no past relevant work. Tr. 614. At step five, the ALJ relied on the testimony of a vocational expert to find there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 614–15. Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 615.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises two issues on appeal. She argues the ALJ erred by improperly rejecting (1) her subjective symptom testimony and (2) certain medical opinion evidence.

### I.    Subjective Symptom Testimony

Plaintiff argues the ALJ improperly discounted her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1

(Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons" (quotation marks and citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." (quotation marks and citations omitted)).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons

proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" and did not identify evidence of malingering. Tr. 600. However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 600. Plaintiff challenges these conclusions to the extent they relate to her right foot and mental health.

### a.  Right Foot Testimony

The ALJ summarized Plaintiff's testimony about her right foot as follows:

> Since the first hearing, her foot condition, Achilles tendonitis in the right foot, had worsened. She had swelling in her foot, and she needed to keep it elevated and used ice on the foot on a regular basis. She would elevate her foot twice a day for 15 to 20 minutes. A brace helped "a little." Since the first hearing, her anxiety had worsened, related to her foot. She felt scared and worried about her foot. Her medication was effective, and she did not have any side effects, although it made her a little tired.

Tr. 600. The ALJ discounted this testimony, finding that Plaintiff received only conservative treatment, Plaintiff had failed to follow recommended treatment, there were inconsistencies between Plaintiff's testimony and the medical record, and Plaintiff's testimony was not supported by the objective medical evidence.

### i.  Conservative Treatment

An ALJ may rely on evidence of conservative treatment to "discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (internal quotation marks omitted). However, no adverse credibility finding is warranted where a claimant has a good reason for failing to pursue more aggressive treatment, s*ee Orn v.*

*Astrue*, 495 F.3d 625, 638 (9th Cir. 2007), or where "the record does not reflect that more aggressive treatment options are appropriate or available," *Lapeire-Gutt v. Astrue*, 382 F. App'x 662, 662 (9th Cir. 2010) (a "claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").

Plaintiff argues that while "treatment for [Plaintiff's] right foot problems may be considered conservative," she received this treatment "due to a combination of her insurance not approving other treatments, [Plaintiff's] desire to avoid surgery if possible, and the lack of other viable treatment options for her conditions." Pl. Br. 10. While the Court fails to see the relevance of Plaintiff's "desire to avoid surgery," the Court sees no reference to other viable treatment options, and the record supports Plaintiff's position that insurance would not cover more aggressive options. *See* tr. 1175 (Plaintiff "[r]eports insurance won't cover any other treatment than the brace she is using); tr. 1254 (surgery would likely not be covered by OHP); tr. 1260 (OHP denied referral for physical therapy and revisional arthroplasty "would mostly likely run into the [same] approval issue"). Thus, the ALJ erred in erred in relying on conservative treatment to reject Plaintiff's testimony about her right foot.

### ii. Failure to Follow a Recommended Treatment

An "ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina*, 674 F.3d at 1113 (quoting *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). Here, the ALJ found that Plaintiff "did not wear her walking boot as recommended by her podiatrist, despite admitting that wearing the boot helped her symptoms." Tr. 606.[3]

---

[3] The ALJ also referenced "poor medication adherence," but the citation appears to relate to Plaintiff's mental health testimony. The Court will therefore address this reasoning below.

Plaintiff argues that she has "largely been compliant with treatment and any instances of noncompliance have been temporary and with reasonable explanations." Pl. Br. 12. Specifically, with regard to the walking boot, Plaintiff reported difficulties wearing the device because it did not fit well and caused hip and back pain. *See* tr. 1271 (wearing boot while walking caused Plaintiff's back to hurt); tr. 1159 (Plaintiff reported that brace hurt her foot); tr. 1277 ("Has been wearing her boot, which is throwing off her back and hips."); tr. 1290 (changed from XL to XS brace). While the record does suggest that Plaintiff was initially provided with a poorly-fitted brace, she eventually received a well-fitted brace. As the ALJ noted, the well-fitted brace, when used, helped. Tr. 1175 ("client reports foot pain is relieved today, saying she put her brace on properly today"); tr. 1290 ("Brace working out ok.'"). However, the Court sees no citation from the ALJ or parties suggesting that Plaintiff failed to use the brace as recommended *after* receiving one that fit well. Plaintiff's arguments are therefore well taken, and the ALJ erred in relying on Plaintiff's alleged failure to follow recommended treatment.

### iii.  Inconsistencies with the Medical Record

An ALJ may rely on inconsistencies between a plaintiff's testimony and the medical record. *Molina*, 674 F.3d at 1112; *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (plaintiff's testimony of weight fluctuation was inconsistent with the medical record).  At the hearing, Plaintiff testified that her foot "keeps swelling up continually, and [she's] had to keep it elevated and iced on a regular basis." Tr. 632. When asked whether a doctor told her to elevate her foot, she responded "Yes. Yes. A lot. Because just like another doctor, [Dr. Young] said that I don't want to keep swelling in my foot going too long." Tr. 639.

The ALJ found that this testimony was inconsistent with the medical record:

> Overall, the record shows that [Plaintiff's] providers objectively noted only mild or no swelling in the lower extremities. Also, the treatment record does not

contain any recommendation from any provider that she elevate her lower
extremities, that she ice her lower extremities, or that she reported doing so to her
providers.

Tr. 606 (citations omitted).

Plaintiff does not challenge that ALJ's finding that the record reflects "only mild or no

swelling in the lower extremities." Instead, Plaintiff argues only that "Dr. Stanley specifically

recommended that she continue icing her ankle" and Dr. Young opined that Plaintiff needed "to

elevate her legs six inches approximately 50 percent of a workday." Pl. Br. 11.

The Court does not find these arguments persuasive. First, Plaintiff relies on the

following note from Dr. Stanley:

[Plaintiff's] foot xray was normal, and her toe xray showed no evidence of
fracture. There was some mild arthritis in the toe. She should continue icing and
use the walking boot as needed if her foot or toe hurt, but she doesn't need to
buddy tape and can stop using walking boot if she wants.

Tr. 1072. Given the qualified nature of this note, and the fact that Plaintiff identifies no other

reference to icing, the Court cannot find that this single citation undermines the ALJ's

conclusion that the record does support Plaintiff's testimony that her foot was "swelling up

continuously" and needed to be iced regularly.

Second, the Court does not agree that Dr. Young's opinion contradicts the ALJ's

conclusion that "the treatment record does not contain any recommendation from any provider

that she elevate her lower extremities, that she ice her lower extremities, or that she reported

doing so to her providers." Plaintiff relies on Dr. Young's physical capacity statement, filled out

at the request of Plaintiff's attorney, in which Dr. Young opined that Plaintiff would need to

elevate her lower extremities for 50% of an eight-hour workday. *See* tr. 1182. Plaintiff does not,

however, cite any underlying treatment records related to this opinion. In other words, there is no

evidence that Dr. Young ever *recommended*, during the course of the treating relationship, that

Plaintiff elevate her lower extremities. Moreover, the ALJ afforded Dr. Young's opinion little

weight, in part because it was "highly inconsistent with [Dr.] Young's treatment records and the

KP [Kaiser Permanente] records as a whole." Tr. 611. In particular, the ALJ noted that "[Dr.]

Young's treatment notes and the KP records [] do not show that she advised the claimant to

elevate her legs, or even that the claimant reported she was elevating her legs. [Dr.] Young and

KP records do not show significant swelling or erythema, but only trace or mild edema." Tr. 611

(citations omitted). Plaintiff does not challenge the ALJ's decision to afford the opinion little

weight. Thus, the Court cannot find that the ALJ erred in finding Plaintiff's testimony

inconsistent with the medical record.

### iv. Objective Medical Evidence

An ALJ may consider objective medical evidence in evaluating a plaintiff's subjective

symptom testimony, so long as the ALJ does not reject such testimony solely because it is

unsubstantiated by the objective medical evidence. 20 C.F.R. § 416.929(c); *Rollins v. Massanari*,

*261 F.3d 853, 856, 857 (9th Cir. 2001)* ("Once a claimant produces objective medical evidence

of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based

solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain[;]

. . . . While subjective pain testimony cannot be rejected on the sole ground that it is not fully

corroborated by objective medical evidence, the medical evidence is still a relevant factor in

determining the severity of the claimant's pain and its disabling effects." (internal quotation and

brackets omitted)); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004)

("Graphic and expansive" pain symptoms could not be explained on objective, physical basis by

claimant's treating physician).

Here, the ALJ found that while Plaintiff had some reduced strength in her right leg,

the record reflects grossly normal neurologic exams with no weakness. On exam, the claimant had intact sensation and normal natural tension tests. While her gait was at times antalgic, the record reflects that at times it was also normal, and that range of motion other than in the right ankle was also normal.

Tr. 602 (citations omitted).

While Plaintiff acknowledges again that these "findings might be 'mild,'" she argues that the records consistently document "tenderness and limited function of her right foot, consistent with [Plaintiff's] subjective statements that her foot is often painful and interferes with her activities." Pl. Br. 10.[4] Even if the objective medical evidence does not necessarily contradict Plaintiff's complaints of pain and limited mobility, the Court cannot find that the ALJ erred in concluding that it does not support those complaints either. In other words, Plaintiff does not identify any non-mild objective findings, and the ALJ reasonably interpreted the objective medical evidence in the record. As the ALJ provided other valid reasons for rejecting Plaintiff's subjective symptom testimony, the ALJ did not err in relying on objective medical evidence related to Plaintiff's right foot. Accordingly, the ALJ did not err in rejecting Plaintiff's subjective symptom testimony related to her right foot.

### b.  Mental Health Testimony

Plaintiff testified that she experienced anxiety, distraction, and frustration. Tr. 600. The ALJ discounted this testimony, finding that Plaintiff "received very conservative treatment consisting of medication management, which has been largely successful in controlling the claimant's symptoms. While the record shows she experienced exacerbation in her anxiety with stressors including homelessness and harassment by a neighbor, the record shows that her symptoms were generally well controlled and stable." Tr. 602. The ALJ also pointed to poor medication adherence, and noted that

---

[4] She also testified, at the first hearing that she has trouble balancing and walking. Tr. 56.

the record shows she rarely complained of distraction, and providers only rarely noted she was distractible. The only notation the claimant expressed frustration in the file is from August 2016 when she expressed frustration that her new residence was taking so long in giving her a move in date.

Tr. 602 (citations omitted). Finally, the ALJ found that the objective medical evidence was inconsistent with Plaintiff's testimony. Tr. 605.

### i. Objective Medical Evidence

Plaintiff first challenges the ALJ's reliance on the objective medical evidence, which documents normal findings "such as being pleasant and appropriately groomed, maintaining eye contact, being oriented, having logical thought processes, and having a lack of psychosis, delusions, disturbances, hallucinations, or suicidal ideation." Pl. Br. 12. Plaintiff argues that these findings do not contradict Plaintiff's testimony that she "struggles with her attention and memory, has chronic fatigue, low stress tolerance, and high anxiety with panic attacks, which all make it difficult for her to maintain adequate persistence and completion of tasks." Pl. Br. 12. Without any explanation from the ALJ, the Court cannot see how these "normal findings" are relevant to the mental health symptoms at issue here. The ALJ therefore erred in relying on this objective medical evidence.

### ii. Conservative and Effective Treatment

As stated above, an ALJ may rely on evidence that a plaintiff received only conservative treatment. An ALJ may also rely on evidence of effective treatment. *Orteza*, 50 F.3d at 750; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (Claimant's testimony undermined by the fact he responded well to conservative treatment). Here, the ALJ found that Plaintiff "received very conservative treatment consisting of medication management, which has been largely successful in controlling the claimant's symptoms." Tr. 602. The ALJ also noted that "[w]hile the record shows she experienced exacerbation in her anxiety with stressors including

homelessness and harassment by a neighbor, the record shows that her symptoms were generally well controlled and stable." Tr. 602.

First, as to the conservative treatment, the ALJ found that Plaintiff "was not hospitalized for any psychiatric treatment, she did not receive regular mental health counselling, and she consistently denied suicidal ideation or any self-harming behavior." Tr. 602–03.[5] This district, however, has repeatedly found that, in the context of mental health, "the 'mere fact that a claimant has not been admitted to a hospital on an inpatient basis' does not mean that a claimant received conservative treatment." *Jill C. v. Berryhill*, No. 3:17-cv-01892, 2018 WL 6308728 (D. Or. Dec. 3, 2018); *Tammy L. O. v. Comm'r Soc. Sec. Admin.*, Case No. 3:17-cv-774-SI, 2018 WL 3090196, at *13 (D. Or. June 20, 2018); *Sandberg v. Comm'r Soc. Sec. Admin.*, No. 3:14-cv-00810-ST, 2015 WL 2449745 (D. Or. May 22, 2015).

Plaintiff also challenges the ALJ's conclusion that she did not receive "regular mental health counseling." Specifically, Plaintiff's attorney argues that Plaintiff "engaged in regular, ongoing therapy and medication management for her mental health impairments." Pl. Br. 13. In support of this compound argument, she cites a string of page numbers ("Tr. 396-418, 424, 430-433, 440-443, 445-450, 453-457, 482-490, 512-513, 533-535, 989-991, 1025-1056, 1079-1084, 1126-1131, 1135-1180, 1188-1197, 1271-1275, 1304-1308.") but provides no parentheticals explaining what, in particular, she wishes the Court to learn from these records. After reviewing each citation, the Court finds they are largely irrelevant to the ALJ's conclusion; while the ALJ found that Plaintiff did not receive regular mental health *counseling*, the records primarily document ongoing *medication and case management*. Indeed, the Court sees only three documented counseling sessions. *See* tr. 1157, 1159, 1161. While there are a few additional—

---

[5] The fact that Plaintiff "consistently denied suicidal ideation or any self-harming behavior" is not relevant to whether Plaintiff received conservative treatment.

and vague—references to counseling scattered throughout this broad range of pages, *see* tr. 1040 ("now still seen in CEP for counseling") and tr. 1304 (record noting that Plaintiff had a therapist and psychiatrist through OHP), the Court cannot find, on these grounds, that the record does not support the ALJ's conclusion that Plaintiff did not receive *regular* mental health counseling.

Additionally, while Plaintiff argues that "[c]hanges in providers, which caused some disruption in treatment, was largely due to changes in insurance or [] moving," the Court finds this argument highly speculative. While Plaintiff's citations document changes to her insurance and housing, the Court sees no statement in any record, or even from Plaintiff herself, that any disruption in treatment "was largely due to changes in insurance or [] moving." Plaintiff does not argue that medication alone—let alone *Plaintiff's* medication—is necessarily more than conservative treatment. Thus, on this record, the Court cannot find that the ALJ erred in relying on evidence of conservative treatment to discount Plaintiff's mental health testimony.

As to the efficacy of treatment, Plaintiff argues that while she may have been "stable," she continued to report ongoing attention, communication, and anxiety symptoms. First, the Court fails to see how Plaintiff's allegations regarding ongoing attention and communication symptoms are relevant to the ALJ's finding that her anxiety symptoms were generally well controlled and stable. Second, while the Court sees frequent references to anxiety, the Court agrees with the ALJ that this anxiety was often mild and generally well controlled. Tr. 489 ("Some mild improvement in mood, though residual anxiety, rumination, largely 2/2 regrets from substance use hx. Good tolerability and benefit via Celexa and Vistaril"); tr. 521 ("patient indicates that they are not feeling down, depressed, or hopeless"); tr. 522 ("no depression, anxiety, or agitation"); tr. 1050 (Plaintiff is "future and wellness oriented today reporting a remission of symptoms. She reports no problems with serotonergenic symptoms or any increase

in [] sleepiness with the doxepin"); tr. 1053 (Plaintiff "has a stable euthymic mood. She is doing well and making progress in life . . . [m]edications are well tolerated without side effects," mindfulness and positive thinking suggested as a way to cope with anxiety); tr. 1126 (Plaintiff "reports doing well"); tr. 1129 ("Functioning well but feels stressed and has anxiety that goes up and down in response to all the tasks she has to accomplish. Denies depression or SI[.]").

Significantly, even Plaintiff's own citations confirm that Plaintiff's anxiety was the result of temporary situational stressors and sufficiently controlled by a stable medication regimen. *See, e.g.*, tr. 487 (Plaintiff experienced situational stressors but reported that mental health and medications were ok); tr. 500–01 (Plaintiff reported "heightened anxiety due to attempted assault"); tr. 1129 (Plaintiff "feels stressed and has anxiety that goes up and down in response to all the tasks she has to accomplish"), tr. 1131 (Plaintiff "appears to be doing well and remaining functional despite a lot of stressors. She was at times anxious and distractible today, but this seems to me to be within normal limits given the amount of things she has to do right now."), tr. 1150 (Plaintiff reported an anxious mood and ongoing harassment), tr. 1152 (Plaintiff "has responded well to medications over the last year and her symptoms are quite stable when she feels safe and her external stressors are low), tr. 1163 ("Anxiety under ok control although it was better when she was on venlafaxine."), tr. 1169 ("She is feeling stressed out and 'overwhelmed by anxiety' after her podiatrist told her that there is nothing to be done about her foot . . . she suggested that she might try to do some more painting and perhaps some more meditation to also help her deal with her anxiety"), tr. 1175 (Plaintiff "feels pain causes her anxiety and with pain control she will not need venlafaxine"), tr. 1176 ("continue effective medication regimen to manage symptoms"), tr. 1195 (Plaintiff reported "feeling increased anxiety" and wanted "small dose of a benzo to help calm her;" PA agreed to order a few tablets of benzo "if attorney feels

taking a benzo would be helpful."). In sum, the ALJ did not err in relying on evidence that, while Plaintiff's anxiety was sometimes exacerbated by situational stressors, her mental health symptoms were generally well controlled and stable. *See Menchaca v. Comm'r Soc. Sec. Admin.*, No. 6:15-cv-01470-HZ, 2016 WL 8677320, at *7 (D. Or. Oct. 7, 2016) (finding that the ALJ's determination that the plaintiff's symptoms were sometimes caused by situational stressors was reasonable and a legitimate reason to discount the plaintiff's credibility); *Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (finding "the record supports the ALJ's conclusion that [the plaintiff's] mental health symptoms were situational, and so unlikely to persist once [the plaintiff's] circumstances improved").

### iii.  Failure to Follow Recommended Treatment

As stated above, an ALJ may rely on an unexplained failure to follow a prescribed course of treatment. Here, the ALJ noted that Plaintiff displayed "poor medication adherence." Tr. 606. Plaintiff does not dispute that the record shows some instances of poor medication adherence. *See* tr. 482 ("Continues to have sporadic med adherence."), tr. 485 ("Self d-c/d MH meds, reasons unclear, would like to restart"). Instead, Plaintiff speculates that "her temporary struggle with medication compliance was at the beginning of her treatment when they were trying different medications and when she was adjusting to having a medication regimen." Pl. Br. 11. The Court has reviewed Plaintiff's citations and sees no statement in the record from Plaintiff or her doctors to this effect. The ALJ did not therefore err in relying on evidence of a failure to follow recommended treatment.

### iv.  Inconsistencies with the Medical Record

As stated above, an ALJ may rely on inconsistencies between a plaintiff's testimony and the medical record. Here, the ALJ found that Plaintiff

> provided very dramatic testimony at the hearing, which is not borne out by the
> record. For example, the claimant testified to experiencing disabling fatigue.
> However, the treatment record shows this as an infrequent complaint. The
> claimant testified that she experienced significant distraction and secondary
> frustration. However, the record shows she rarely complained of distraction, and
> providers only rarely noted she was distractible. The only notation the claimant
> expressed frustration in the file is from August 2016 when she expressed
> frustration that her new residence was taking so long in giving her a move in date.
> The record does not show any regular complaints of feeling frustrated.

Tr. 606 (citations omitted). Plaintiff does not address this point, appearing to argue only that

"[t]he overall record shows that even when considered stable, [Plaintiff] has ongoing attention,

communication, and anxiety symptoms." Pl. Br. 13. Again, while this may be true, only citations

to "attention" are arguably relevant to the ALJ's findings regarding Plaintiff's inconsistent

testimony about her fatigue, distraction, and frustration. Moreover, the fact that Plaintiff may

have experienced some symptoms does not mean the ALJ erred in finding that the level of

impairment testified to at trial was inconsistent with the medical records. Indeed, in reviewing

Plaintiff's citations,[6] the Court sees only a few references to attention, concentration, or

distraction. Some of those citations suggest some level of impairment. *See* tr. 475 (some

difficulty concentrating); tr. 570 (trouble refocusing and shifting her attention); tr. 1150

(attention distracted); tr. 1196 (impaired attention); tr. 1275 (reported trouble concentrating).

Others, however, do not. *See* tr. 1223 (adequate attention/concentration); tr. 1176 (while other

boxes documenting "cognitive symptoms" checked, box for impaired attention left blank). On

this record, the Court cannot find that the ALJ erred in finding that Plaintiff "rarely complained

of distraction, and providers only rarely noted she was distractible." Thus, the Court cannot find

---

[6] As discussed above, Plaintiff's method of providing string citations, without explanation, for
compound assertions of fact is decidedly unhelpful to the Court. *See, e.g.*, Pl. Br. 13 ("[Plaintiff]
has ongoing attention, communication, and anxiety symptoms. (Tr. 472, 474-476, 487, 500-501,
518, 567-570, 989, 1053, 1129-1131, 1150, 1152, 1163-1164, 1169, 1175-1176, 1195-1196,
1219, 1223, 1272, 1274-1275, 1326-1328.)").

that the ALJ erred in relying on inconsistencies between Plaintiff's testimony and the medical record.

In sum, the ALJ provided multiple clear and convincing reasons, supported by substantial evidence in the record, for rejecting Plaintiff's subjective symptom testimony.

## II.    Medical Opinion Evidence

Plaintiff also argues the ALJ improperly rejected the opinion of Dr. Causeya, an examining physician. Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).  More weight is also given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If a physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61. Even if a physician's opinion is contradicted by another doctor, the ALJ may not reject the opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, the parties agree that the ALJ was required to provide specific and legitimate reasons to reject Dr. Causeya's opinion.

The ALJ gave Dr. Causeya's opinion "little weight." Tr. 611. Specifically, the ALJ found that

> there is no evidence she reviewed any records after 2013, while records from 2014 show the claimant's mental health improved significantly with stable housing and medication management. Additionally, Dr. Causeya's opinions are largely equivocal, as evidenced by her use of the terms "may," "could," and "it

was possible." Moreover, Dr. Causeya did not offer a function-by-function analysis of the claimant's maximum functional capacity. Her opinion the claimant was unable to obtain or maintain gainful employment is conclusory and is not a medical source statement, but a statement on an issue reserved to the Commissioner of Social Security.

Tr. 611.

First, Plaintiff argues that whether Dr. Causeya reviewed the 2014 records is irrelevant, and the 2014 records do not, in fact, document significant improvement. The Court does not agree. While Plaintiff cites two records from 2014 showing that Plaintiff continued to present with a depressed/anxious mood, tr. 482, tr. 1000 ("positive for depression," but also presented with a "normal mood and affect."), other records support the ALJ's conclusion, tr. 491 ("no depression, anxiety, or agitation" on mental status exam), tr. 521 ("patient indicates they have interested and pleasure in doing things;" "they are not feeling down, depressed, or hopeless"), tr. 999 ("Experiences depression occasionally. When she is feeling down she likes to paint."). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation omitted).

Second, Plaintiff challenges the ALJ's finding that "Dr. Causeya's opinions are largely equivocal, as evidenced by her use of the terms 'may,' 'could,' and 'it was possible.'" Plaintiff argues that

> [w]hile there are some instances in the 14 pages of her opinion in which Dr. Causeya used terms such as "may," "could," and "possible," she provided a detailed assessment of [Plaintiff's] limitations and included a functional capacity assessment that provided specific limitations in each area of mental functioning. Thus, the inclusion of a few less precise limitations does not undermine her overall opinion.

Pl. Br. 18 (citation omitted). The Court agrees.

An ALJ is not required to incorporate limitations phrased equivocally into the residual functional capacity. *Valentine*, 574 F.3d at 691–92; *see also Griffith v. Colvin*, No. 3:13-cv-

00585-HZ, 2014 WL 1303102, *5, n.3 (D. Or. Mar. 30, 2014) (doctor's statements that claimant *may* have difficulty completing work without interference from her mental impairments did not represent work-related limitations of function that needed to be reflected in the residual functional capacity). Here, however, while Dr. Causeya certainly made some equivocal and speculative statements within the narrative section of her evaluation—for example, that Plaintiff "may have some difficulty interacting with men in the work environment"—she also provided a detailed and non-equivocal functional capacity assessment. *See* tr. 564–76. This is not, therefore, a situation in which the ALJ may disregard a medical report because it does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan*, 169 F.3d at 601. Thus, while the ALJ may have been able to discount certain equivocal statements, the Court cannot find that this is a specific and legitimate reason to reject the whole of Dr. Causerya's opinion.[7]

Finally, while Plaintiff concedes that Dr. Causeya's statement that Plaintiff is unable to obtain or maintain gainful employment is an issue reserved for the Commissioner, she argues that this is not, alone, a valid reason to reject other parts of the opinion that do not speak to issues reserved for the Commissioner. The Court agrees.

While the ALJ erred in part, this error was harmless. Because the ALJ provided one specific and legitimate reason to afford Dr. Causeya's opinion little weight, the Court upholds the ALJ's decision. *See Carmickle v. Comm'r Soc. Sec Admin.*, 533 F.3d 1155 (9th Cir. 2009) (finding error harmless when the ALJ provided alterative reasons that were supported by substantial evidence and the error did not negate the validity of the ALJ's ultimate conclusion).

---

[7] Because Dr. Causeya completed this functional capacity assessment, the ALJ also clearly erred in concluding that "Dr. Causeya did not offer a function-by-function analysis of the claimant's maximum functional capacity." Defendant does not argue this point.

**CONCLUSION**

The decision of the Commissioner is affirmed.


IT IS SO ORDERED.

Dated: _____ July 8, 2020 _____.


_____
MARCO A. HERNÁNDEZ
United States District Judge